(181 P.3d 583)
No. 97,947

EDITH L. HIZEY, *Appellee,* v. MCI, *Respondent/Appellant,* and ZURICH U.S. INSURANCE COMPANY, *Insurance Carrier/Appellant.*

Opinion filed April 25, 2008.

*Kim R. Martens,* of Hite, Fanning & Honeyman, L.L.P., of Wichita, for appellants.

*R. Todd King,* of Accident Recovery Team, P.A., of Wichita, for appellee.

Before MCANANY, P.J., CAPLINGER and BUSER, JJ.

CAPLINGER, J.: MCI and Zurich U.S. Insurance Company (collectively MCI) appeal the decision by the Workers Compensation Board (Board) to award claimant Edith L. Hizey compensation for

an injury occurring at MCI's workplace during working hours. MCI contends the injury occurred during a "recreational or social event," as set forth in K.S.A. 2004 Supp. 44-508(f), and did not arise "out of or in the course of" Hizey's employment.

We affirm the Board's findings and hold that when an employee is on duty and participates in an activity on company premises which is organized, encouraged, and supervised by the employer and which benefits the employer as well as the employee, the activity does not fall within K.S.A. 2004 Supp. 44-508(f)'s exception for "recreational and social events."

*Factual and procedural background*

Because Hizey offered the only evidence related to the circumstances of her injury, the underlying facts are undisputed for purposes of this appeal.

Hizey began working as a sales representative for MCI in 1992. Hizey's employment generally involved contacting potential customers by phone to attempt to sell MCI long-distance and local telephone services. However, when she was hired, Hizey was informed that she could earn extra money by participating in various incentive programs. The incentive programs, which MCI maintained throughout Hizey's employment, took two basic forms. One type of incentive was a typical performance-based program, in which sales representatives were given bonuses or extra vacation time for achieving a certain number of sales in a given period or obtaining sales above and beyond the established goal for a 2-week period.

The other type of incentive program—the program at issue here—created opportunities for employees to earn prizes, cash, or vacation time by voluntarily competing in contests or games, such as poker, pie-throwing contests, karaoke contests, and dance contests. These incentive activities were organized, announced, and supervised by MCI management and were designed to energize and motivate employees as well as to provide incentives for employees to remain with the company by providing additional opportunities to make money. The employees continued to be paid while they participated in the activities, and the activities always

occurred during regular working hours and usually took place on MCI's premises. Although participation was not mandated, MCI's management encouraged employees to participate.

Shortly after the morning break on October 7, 2003, MCI management announced a dance contest. Despite some initial reluctance, Hizey participated in the contest and twisted her knee. Hizey's knee collapsed and she fell backward, hitting her head on the floor as she did so. After lying on the floor for a few minutes, Hizey was helped to a chair and wheeled to the security office, where she waited until her husband arrived to take her to the hospital. Since the fall, Hizey has suffered increased pain in her knees, lower back, neck, and head.

As a consequence of her injuries, Hizey filed an application for workers compensation on November 21, 2003, and also sought a preliminary hearing to establish immediate payment of benefits. MCI contended the injury occurred as the result of a voluntary social or recreational activity and, thus, was not compensable according to K.S.A. 2004 Supp. 44-508(f). The administrative law judge (ALJ) disagreed, finding that the activity causing Hizey's injury did not fall within the definition of "recreational or social events" as provided in K.S.A. 2004 Supp. 44-508(f).

MCI appealed the ALJ's preliminary hearing order to the Board. The Board, applying factors set forth in 2 Larson's Workers' Compensation Law § 22.01 (2000), concluded the nature of the activity was not predominantly social or recreational; rather, it was within the scope of Hizey's employment.

While the appeal of the preliminary hearing was pending, Hizey filed an application for temporary disability benefits and requested another preliminary hearing. MCI again argued the injury was not compensable under K.S.A. 2004 Supp. 44-508(f). The ALJ refused to reconsider the question of compensability and awarded Hizey the temporary disability benefits she sought. The Board dismissed MCI's appeal of this decision.

After a regular evidentiary hearing, the ALJ again affirmed the work-related nature of the injury and awarded Hizey 45.05 weeks of temporary total disability compensation, plus 192.48 weeks of permanent partial disability compensation, for a 50% work disa-

bility. The total award was $62,912.19, plus attorney fees and costs. On appeal, the Board modified the award and reduced the total award accordingly. Regarding the compensability of the injury, the Board affirmed its previous ruling, stating:

"These activities had become a regular part of the employment with this respondent. The activities, organized by the employer, with prizes as incentives, were supervised by respondent's management team and the employees were encouraged to attend. The activities were always on company time and were held on respondent's premises. *The Board finds that these activities, rather than being recreationally or socially motivated activities, were elevated to activities of employment with this employer.* It is clear that these activities were beneficial to both the employer and the employees. The Board finds that claimant has proven that she suffered accidental injuries arising out of and in the course of her employment with respondent on October 7, 2003." (Emphasis added.) .

One Board member dissented, reasoning that because Hizey's injury was related to a recreational activity in which Hizey was not obligated to participate and which did not "arise from any task related to her normal job," K.S.A. 2004 Supp. 44-508(f) barred recovery.

*Discussion*

The sole issue raised in this appeal is whether, under the undisputed facts of this case, K.S.A. 2004 Supp. 44-508(f) bars recovery under the Workers Compensation Act, K.S.A. 44-501 *et seq.* Specifically, MCI contends the Board applied an improper legal standard for determining whether Hizey's injury arose out of her employment.

Appeals from decisions by the Board are governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, and our review of such decisions is limited to questions of law, including whether the Board's findings of fact are supported by substantial competent evidence. *Rinke v. Bank of America*, 282 Kan. 746, 750-51, 148 P.3d 553 (2006). An issue involving whether an accidental injury arises out of and in the course of employment is a question of fact. *Titterington v. Brooke Insurance*, 277 Kan. 888, 896, 89 P.3d 643 (2004). Nevertheless, where, as here, the underlying facts are undisputed, the Board's application of legal principles is subject to unlimited appellate re-

view. *Lawson v. City of Kansas City*, 22 Kan. App. 2d 507, 509, 918 P.2d 653 (1996) (citing *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 536, 809 P.2d 538 [1991]).

When an employer is covered by the Workers Compensation Act, an employee's injury is generally compensable when the injury arises out of and in the course of employment. *Rinke*, 282 Kan. at 752. K.S.A. 2004 Supp. 44-508(f) assists in establishing the parameters of a work-related injury and provides in pertinent part:

"The words, 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to employees while engaged in recreational or social events under circumstances where the employee was under no duty to attend and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer."

MCI contends Hizey was injured while engaged in a "recreational event" in which she was not required to participate. MCI further argues the injury did not result from the performance of tasks related to Hizey's normal job duties. In contrast, Hizey claims the various incentive programs, including the dance contest, were not "recreational events" but rather were activities within the normal scope of Hizey's employment because the activities were organized, implemented, and encouraged by management for the benefit of the company and occurred during business hours on MCI's premises.

Both parties cite to various unpublished opinions of this court applying 44-508(f). See *Dickerson v. A-1 Appliance Plumbing, Heating & Cooling, Inc.*, No. 92,730, unpublished opinion filed February 4, 2005, *rev. denied* 280 Kan. 982 (2005); *McIntosh v. City of Wichita*, No. 90,921, unpublished opinion filed April 2, 2004; *Flower v. City of Junction City*, No. 80,801, unpublished opinion filed March 12, 1999. While none of the cited opinions is directly on point, a review of these cases is helpful in determining the applicability of K.S.A. 2004 Supp. 44-508(f) to the facts of this case.

In *Dickerson*, an A-1 employee was injured while participating in a "sumo wrestling" competition at the company's Christmas party, which was held on company premises outside of normal busi-

ness hours. Slip op. at 3. Dickerson, a service technician, was "on call" that evening but was not required to attend the party. Slip op. at 3. Dickerson's supervisor encouraged him to participate in the sumo wrestling competition, which was a party activity planned by the employer. Dickerson complied but fell and injured his knee during the event. A panel of this court affirmed the Board's denial of workers compensation for the knee injury, finding "Dickerson failed to prove either prong of K.S.A. 2003 Supp. 44-508(f)." Slip op. at 7.

In urging us to adopt a narrow interpretation of K.S.A. 2004 Supp. 44-508(f), MCI fails to consider the significant factual distinctions between this case and *Dickerson*. *Dickerson* concerns the quintessential "recreational event" sponsored by an employer, *i.e.*, a holiday party during nonworking hours at which attendance was optional and during which the employees participated in activities that were not designed to benefit the employer in any way.

In contrast, in this case, the activities were organized, announced, and supervised by MCI management and occurred on MCI's premises during regular working hours. Employees continued to be paid during the activity. Further, participation in the activity, while not mandatory, was expressly encouraged by management and implicitly encouraged through the offers of bonuses, vacation time, and prizes. And significantly, while the employees may have enjoyed some of the activities selected by MCI, the primary purpose of the activities was related to the business, *i.e.*, to motivate employees to remain with MCI and to energize the employees' sales force, ultimately increasing sales.

MCI also cites this court's opinion in *McIntosh v. City of Wichita*, No. 90,921, unpublished opinion filed April 2, 2004, as support for disallowing compensation here. In *McIntosh*, a firefighter was injured while playing tennis at a park approximately 1 mile from the fire station during his "discretionary" time on the evening shift. Slip op. at 3. Although the City conducted an organized fitness program every morning in which firefighters had the option to participate, playing tennis in the evenings at the local park was not part of that program.

Applying K.S.A. 2004 Supp. 44-508(f), the Board denied compensation, and on appeal this court affirmed, stating:

"The Board correctly applied [K.S.A. 44-508(f)] to this case. It found that McIntosh had no duty to play tennis nor was tennis playing required by the City. Rather, the Board found that McIntosh chose to play tennis as a voluntary recreational activity during his discretionary time. The City had a specific fitness program during the morning hours if a firefighter chose to participate in it, and that program did not include playing tennis at the park in the evening. There was no evidence that the City required the firefighters to engage in physical activity during their discretionary time if they were unable to participate in the physical fitness program that morning. The City did know the firefighters played tennis at the park, but McIntosh was under no duty or specific instructions from the City to do so; therefore, his injuries did not result from the performance of tasks related to his normal job duties as a firefighter." *McIntosh*, slip op. at 6.

While the facts in *McIntosh* are somewhat analogous to facts here, they are nevertheless distinguishable. In *McIntosh*, the firefighter was not on his employer's premises when the accident occurred, and the accident occurred during a "discretionary period" while the employee was playing tennis. Further, the employer had no part in planning, scheduling, or conducting the evening tennis game. Moreover, the *McIntosh* court seemed to imply that had the injury occurred during the morning exercise activity period scheduled by the employer during regular duty hours, it might have been compensable, even though participation in the morning exercise period was voluntary.

Finally, in *Flower v. City of Junction City*, No. 80,801, unpublished opinion filed March 12, 1999, the panel was faced with facts very similar to those of *McIntosh* but reached an opposite conclusion. Flower, a firefighter, was injured while playing volleyball in a building adjacent to the fire station during a scheduled physical fitness break on his 24-hour shift. This court affirmed the Board's determination that the injury was compensable as arising out of and in the course of employment, finding:

"[K.S.A. 44-508(f)] applies to injuries sustained while an employee is engaged in a recreational or social *event*, not when an employee is actually on duty when he is injured, as in this case. Because the section does not apply, this court must look at the normal scope of employment analysis." Slip op. at 2-3.

Then, applying the normal scope of employment analysis, the *Flower* court found that the claimant's injury arose out of the "nature, conditions, obligations, and incidents of his employment." Slip op. at 3.

Here, as in *Flower*, Hizey was on duty at the time of her injury and was participating in an event that, although voluntary, was scheduled and planned by the employer. Further, just as the City in *Flower* benefitted from firefighters maintaining regular physical activity, MCI benefitted from activities which motivated and energized its sales force.

Perhaps most significant to our analysis, however, is the panel's conclusion in *Flower* that 44-508(f) and its two-prong test simply did not apply to circumstances where the employee was on duty and injured in an activity scheduled by the employer. We do not go so far as to hold, as *Flower* suggested, that whenever an employee is participating in an activity with recreational or social components while on duty, the employee is not participating in a recreational or social "event" covered by 44-508(f). Slip op. 2-3. We do find, however, that when an employee is on duty and participates in an activity on company premises which is organized, encouraged, and supervised by the employer and which benefits the employer as well as the employee, the activity does not fall within 44-508(f)'s exception for "recreational and social events." Rather, as the Board found here, such activities, "rather than being recreationally or socially motivated activities, were elevated to activities of employment with this employer."

Under the circumstances of this case, the activity which resulted in Hizey's injury was not a "recreational or social event" and so the two-pronged test of K.S.A. 2004 Supp. 44-508(f) did not apply. The Board correctly concluded Hizey suffered accidental injury arising out of and in the course of her employment, and thus her injury was compensable.

Affirmed.