(213 P.3d 764)
No. 101,445

DANNY DOUGLAS, *Appellee*, v. AD ASTRA INFORMATION SYSTEMS, L.L.C., AND HARTFORD INSURANCE COMPANY, *Appellants*.

Opinion filed August 14, 2009.

*Tracy M. Vetter*, of Law Offices of Steve Piland, of Overland Park, for appellants.

*Daniel L. Smith*, of Ankerholz and Smith, of Overland Park, for appellee.

Before MALONE, P.J., GREEN and STANDRIDGE, JJ.

MALONE, J.: Ad Astra Information Systems, L.L.C., and Hartford Insurance Company (collectively Ad Astra) appeal the decision of the Workers Compensation Board (Board) that Danny Douglas' lung injury arose out of and in the course of his employment with Ad Astra. Douglas, who worked as a computer support

analyst for Ad Astra, was injured while racing a go-cart at an off premises event hosted by Ad Astra during regular work hours. Ad Astra claims that Douglas is not entitled to workers compensation benefits because his injuries were sustained during a recreational or social event as contemplated by K.S.A. 2008 Supp. 44-508(f).

In 2006, Douglas was employed by Ad Astra, a software company in Overland Park, Kansas. His job was to answer questions from customers and solve problems concerning Ad Astra's software products between the hours of 8 a.m. and 5 p.m., Monday through Friday. On Friday, November 3, 2006, Douglas received an email at work regarding a company event that was scheduled that afternoon at Sadler's in Olathe, Kansas. Sadler's is a recreational facility open to the public where patrons come to play video games, play pool, eat, and race go-carts. Ad Astra scheduled the event primarily to thank employees for their extra work at a recent conference for company clients. Douglas also considered the event to be a "team builder." Employees were given a choice of either going to the event or remaining at work that afternoon. Douglas felt pressured to attend the event to demonstrate that he was part of Ad Astra's team.

Douglas arrived at Sadler's at about 12:30 p.m., and he was greeted by Jackie Shaver, Ad Astra's coowner. She directed Douglas to a private meeting room where food had been prepared exclusively for Ad Astra's employees. Ad Astra paid for all the employees' food and the rental fees at Sadler's. While the food was being served, Jackie Shaver divided the employees into teams for competitive events that were planned for the afternoon. At the beginning of the meeting, Tom Shaver, Ad Astra's other coowner, thanked the employees for their extra work at the conference. He also discussed the release of a new software product, and Douglas considered this a pep talk.

Ad Astra reserved Sadler's go-cart race track exclusively for its employees, and Douglas testified that employees were encouraged to race the go-carts. Douglas normally would not race a go-cart, but he agreed to do so because he wanted to be part of his team. Douglas testified that the teams were being encouraged to go as fast as they could because there would be prizes for those teams

with the fastest time. Douglas testified that the go-cart racing "was meant to boost morale and boost sales to kind of energize the company."

While racing his go-cart, Douglas swerved to avoid a stopped go-cart and hit a tire wall. He was ejected from the go-cart onto his right side. Douglas did not complete the race because he was in pain. However, he stayed at Sadler's until the event was over because he did not believe that he was free to leave before 5 p.m. Douglas received his normal pay for that afternoon.

Douglas' pain continued to worsen, so he sought medical treatment at St. Luke's emergency room. X-rays were taken, and Douglas was prescribed some pain medication. Over the next 2 weeks, Douglas' condition progressively worsened, so he returned to St. Luke's emergency room. X-rays were taken again which revealed that Douglas' right lung was filling with fluid. Douglas' family physician referred him to a thoracic surgeon, Dr. Kevin L. Mayer, who performed surgery on November 30, 2006, to remove the fluid from his lung. It was also determined that Douglas had suffered a rib fracture. Douglas was off work for a few weeks following his surgery and received his regular pay.

Douglas filed a workers compensation claim, and the case proceeded to a regular hearing before the administrative law judge (ALJ). In addition to Douglas' testimony, Jackie Shaver testified that the event at Sadler's was a "thank you" to Ad Astra's employees for their extra work at the conference. She further testified that attendance at the event was not mandatory but she wanted employees to attend the event. However, those employees who did not participate were not reprimanded and simply stayed at the office and worked. Shaver agreed that the event might encourage employees to renew their efforts on behalf of Ad Astra in providing customer service or sales. Ad Astra deducted the expenses for the event on its taxes as a necessary business expense.

Tom Shaver testified by deposition that he gave a thank you speech to all those in attendance at the event. He further testified that from his perspective the event was not mandatory and it was supposed to be fun. Shaver agreed the event was intended to create good feelings among the employees towards Ad Astra. Shaver fur-

ther agreed that only Ad Astra's employees were on the race track during the racing.

Stacy White, Ad Astra's regional accounts manager, testified by deposition that she received an invitation by email to attend the event. She indicated that it was to be a fun event for all employees due to their hard work at the conference. White agreed that team building might have also been the idea for the event, but this concept was not expressly stated.

Joy Hoffman, Ad Astra's administrative assistant, testified by deposition that the event was planned by management to be a reward for all the hard work that had been required at the conference. Although Hoffman did not attend the event at Sadler's, she agreed there was pressure to do so. Hoffman testified that she was concerned that she might be perceived as someone who was not part of the group for not attending the event. She also stated it was her perception that it was a team building event. According to Hoffman, only one or two other employees in the entire company did not attend the event.

After considering the evidence, the ALJ found that Douglas' injury arose out of and in the course of his employment with Ad Astra, rather than during a recreational or social event as contemplated by K.S.A. 2008 Supp. 44-508(f). Accordingly, the ALJ found that Douglas' claim was compensable and awarded benefits for a 15% work disability.

Ad Astra requested review by the Board. After a thorough review of the evidence presented to the ALJ, the Board made extensive factual findings. To summarize, the Board found that the event at Sadler's was a team building exercise to boost employees' morale and energize Ad Astra's sales. The Board found that those employees who attended were paid their regular salary, and the employees who did not attend were required to remain at work. The Board found that Ad Astra paid for all the food and rental fees for the exclusive use of the go-cart race track, which payments Ad Astra deducted as business expenses for tax purposes. The Board found that Ad Astra assigned and encouraged the teams to drive fast because there would be prizes for those teams with the fastest times. Although Ad Astra intended the event to be a fun way to

thank its employees for their hard work, the Board found that Douglas and at least one other coworker felt pressured to attend.

The Board noted that K.S.A. 2008 Supp. 44-508(f) does not define the phrase "recreational or social event." Accordingly, the Board applied the factors set forth in 2 Larson's Workers' Compensation Law § 22.01 (2009) (Larson's), to determine whether Douglas sustained an injury within the course of his employment rather than during a recreational or social event. First, the Board found that Ad Astra impliedly required participation in the event by insisting that employees remain at work as the only option to attending the event. Second, the Board found that rewarding employees for past work was not Ad Astra's sole intention for the event; the coowners also gave a brief speech about a new product and assigned teams, which implied a team building activity. Third, the Board found that although the event did not occur on Ad Astra's premises, the employees were being paid while in attendance. The Board concluded:

"There was, at a minimum, an implied requirement or *some duty* to attend the event, and [Douglas] was assigned to a team which indicates that team building was a component of the event. Moreover, he was encouraged to drive fast in the race. He was paid while attending the event at a location reserved for [Ad Astra's] employees. Understanding that work often entails social interaction and that the Workers Compensation Act was intended to be liberally construed to bring employers and employees within its provisions, the Board finds [Douglas'] accident did not occur during a recreational or social event as contemplated by K.S.A. 2007 Supp. 44-508(f)." (Emphasis added.)

Pursuant to the parties' stipulation, the Board modified the ALJ's award to reflect a functional impairment rather than a work disability and affirmed the ALJ's award in all other respects. Ad Astra timely appeals.

On appeal, Ad Astra claims the Board erred in its interpretation and application of K.S.A. 2008 Supp. 44-508(f) by finding that Douglas' go-cart injury was within the course and scope of his employment. First, Ad Astra argues that the Board erred by applying the factors set forth in Larson's instead of following the statutory language of K.S.A. 2008 Supp. 44-508(f) to determine whether Douglas sustained an injury within the course of his employment.

Second, Ad Astra argues that the Board's factual finding that Douglas was under a duty to attend the event at Sadler's is not supported by substantial evidence.

Pursuant to K.S.A. 2008 Supp. 44-501(g), the Workers Compensation Act (the Act) shall be liberally construed for the purpose of bringing employers and employees within the provisions of the Act. K.S.A. 2008 Supp. 44-501(a) generally provides that a worker can recover under the Act as follows:

"If in any employment to which the workers compensation act applies, personal injury by accident *arising out of and in the course of employment* is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act. In proceedings under the workers compensation act, the burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends. In determining whether the claimant has satisfied this burden of proof, the trier of fact shall consider the whole record." (Emphasis added.)

K.S.A. 2008 Supp. 44-508(f), which provides the basis for the dispute in this appeal, states in relevant part:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to employees while engaged in recreational or social events under circumstances where the employee was under no duty to attend and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer."

Under K.S.A. 2008 Supp. 44-508(f), an employee is barred from recovery under the Act for injuries to the employee while engaged in recreational or social events when two circumstances are both met. First, the subsection only applies where the employee was under no duty to attend the recreational or social event. Second, the subsection only applies where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer. Here, there is no question that the second circumstance is met because go-cart racing is not part of Douglas' normal job duties. Thus, in order to determine whether K.S.A. 2008 Supp. 44-508(f) applied to bar Douglas' recovery, the Board focused on the first

circumstance of whether Douglas was under no duty to attend the event at Sadler's.

Initially, Ad Astra argues that the Board erred by applying the factors set forth in Larson's instead of following the statutory language of K.S.A. 2008 Supp. 44-508(f) to determine whether Douglas sustained an injury within the course of his employment. Ad Astra contends that by relying on the Larson's factors, the Board ignored the statutory language of K.S.A. 2008 Supp. 44-508(f).

The Act for Judicial Review and Civil Enforcement of Agency Actions, now renamed the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, provides the grounds upon which relief may be granted in appeals of workers compensation awards entered on or after October 1, 1993. See K.S.A. 2008 Supp. 44-556(a); L. 2009, ch. 109, sec. 23. To the extent that Ad Astra raises an issue concerning the Board's interpretation of K.S.A. 2008 Supp. 44-508(f), the KJRA governs the scope of review, providing in part that the court shall grant relief only if it determines "the agency has erroneously interpreted or applied the law." L. 2009, ch. 109, sec. 28(c)(4) (amending K.S.A. 77-621).

The interpretation of statutory provisions under the Act is a question of law. Under the doctrine of operative construction, the Board's interpretation of the law is entitled to judicial deference. If there is a rational basis for the Board's interpretation of a statute, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 (2007). As the party challenging the Board's interpretation of a statute, Ad Astra bears the burden of proving its invalidity. See *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004).

We disagree with Ad Astra's contention that the Board *ignored* the statutory language of K.S.A. 2008 Supp. 44-508(f). Rather, in interpreting and applying that statute, the Board noted that the Act does not define a "recreational or social event" within the purview of K.S.A. 2008 Supp. 44-508(f). Larson's devotes an entire chapter to determining whether recreational or social activities are within

the course of employment. Thus, the Board consulted Larson's, which provides in relevant part:

"Recreational or social activities are within the course of employment when

(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

· "(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

"(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." 2 Larson's Workers' Compensation Law § 22.01, p. 22-2.

As the Board noted, the Act does not define what constitutes recreational or social events contemplated by K.S.A. 2008 Supp. 44-508(f). Our appellate courts have often looked to Larson's when interpreting various provisions of the Act. See, *e.g.*, *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 288-89, 144 P.3d 668 (2006) (quoting Larson's as a leading treatise to define " 'course of employment' " before interpreting and applying the " 'going and coming' rule" also found in 44-508[f]); *Coleman v. Armour Swift-Eckrich*, 281 Kan. 381, 382-84, 130 P.3d 111 (2006) (citing Larson's in overruling prior case law denying compensation to a nonparticipating victim of horseplay); *McIntosh v. Sedgwick County*, 34 Kan. App. 2d 684, 689-90, 123 P.3d 740, *aff'd* 282 Kan. 636, 147 P.3d 869 (2006) (citing Larson's in determining the legislative intent and policy behind the offset provision in K.S.A. 44-501[h] for duplicate wage-loss benefits).

In determining whether Douglas' injuries were compensable under the Act, the Board focused on whether he was under no duty to attend the event at Sadler's. This is the appropriate statutory test being disputed in Douglas' case. We conclude the Board did not err by consulting the factors set forth in Larson's in interpreting and applying the exclusionary provision of K.S.A. 2008 Supp. 44-508(f).

Ad Astra's primary contention on appeal is that the Board erred in concluding that Douglas was under a duty to attend the event at Sadler's. Ad Astra argues that the Board "evaluated the evidence

but disregarded the substantial and overwhelming body of evidence that in fact no duty, express or implied, existed for [Douglas] or other employees of Ad Astra to attend the thank-you event at Sadler's." Ad Astra claims the only evidence that the event was mandatory came from Douglas and was based only on his feelings and beliefs. Ad Astra insists that Douglas' "feelings do not change the reality of the situation—that the event was not mandatory."

Whether an accidental injury arises out of and in the course of employment is a question of fact. *Titterington v. Brooke Insurance*, 277 Kan. 888, 896, 89 P.3d 643 (2004). To be entitled to recovery under the Act, the employee has the burden of proving that he or she suffered an accidental injury arising out of and in the course of employment. K.S.A. 2008 Supp. 44-501(a). The KJRA now provides, in pertinent part, that in reviewing an agency's factual determinations:

"(c) The court shall grant relief only if it determines . . .:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." L. 2009, ch. 109, sec. 28(c)(7) (amending K.S.A. 77-621).

K.S.A. 77-621 was amended effective July 1, 2009, and a new subsection (d) was added to clarify what is meant when a court reviews the evidence "in light of the record as a whole." L. 2009, ch. 109, sec. 28(c)(7), (d). Although substantive legislative changes usually apply only prospectively, procedural changes generally apply to pending cases unless substantive or vested rights are affected. *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 222-23, 73 P.3d 753 (2003). 77-621(d) now provides:

"For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all the relevant evidence in the record, compiled pursuant to K.S.A. 77-620 and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor

of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." L. 2009, ch. 109, sec. 28(d) (amending K.S.A. 77-621).

In conducting its analysis, the Board cited and discussed *Hizey v. MCI*, 39 Kan. App. 2d 609, 181 P.3d 583, *rev. denied* 286 Kan. 1177 (2008). Hizey worked as a sales representative for MCI, and her employment generally involved contacting potential customers by phone to attempt to sell MCI long-distance and local telephone services. However, when she was hired, Hizey was informed that she could earn extra money by participating in various incentive programs. One incentive program created opportunities for employees to earn prizes, cash, or vacation time by voluntarily competing in games such as poker, pie-throwing contests, karoke contests, or dance contests. These incentive activities were organized, announced, and supervised by MCI management and were designed to energize and motivate employees as well as to provide incentives for employees to remain with the company by providing additional opportunities to make money. The employees continued to be paid while they participated in the activities, and the activities always occurred during regular working hours and usually took place on MCI's premises. Although participation was not mandated, MCI's management encouraged employees to participate.

Hizey was injured during a dance contest arranged by MCI's management. MCI claimed that Hizey's injury was not compensable under K.S.A. 2004 Supp. 44-508(f) because it occurred as the result of a voluntary social or recreational activity. The ALJ and the Board disagreed with MCI and concluded that Hizey's injury arose out of and in the course of her employment. Interestingly, the Board consulted Larson's § 22.01 to conclude the nature of the dance contest was not predominately social or recreational, but rather was within the scope of Hizey's employment. See 39 Kan. App. 2d at 611-12.

On appeal, this court affirmed the Board's decision and found that when an employee is on duty and participates in an activity on company premises which is organized, encouraged, and supervised by the employer and which benefits the employer as well as the

employee, the activity does not fall within the exception for "recreational and social events" under K.S.A. 2004 Supp. 44-508(f). Under the circumstances of the case, the court concluded that the dance contest which resulted in Hizey's injury was not a "recreational or social event" and so the two-pronged test of K.S.A. 2004 Supp. 44-508(f) did not apply. 39 Kan. App. 2d at 616.

Although there are similarities between Douglas' case and *Hizey*, there are also important differences. Here, for example, the event occurred at Sadler's, rather than on Ad Astra's premises, and there was no evidence that Ad Astra made the event a regular part of its operations. More importantly, the result in *Hizey* was driven by the fact that Hizey's participation in the dance contest was part of her compensation at MCI. Under the circumstances, the court concluded that the dance contest did not qualify as a "recreational or social event" within the meaning of K.S.A. 2004 Supp. 44-508(f). See 39 Kan. App. 2d at 610-11, 614-16. Here, the event at Sadler's qualifies as a recreational or social event, but the issue is whether Douglas was under no duty to attend the event. Because of the differences between the facts in *Hizey* and the facts in the present case, we place less reliance than the Board on *Hizey* in determining whether Douglas' injury arose out of and in the course of his employment with Ad Astra.

As previously stated, the primary focus of this case is whether Douglas was under no duty to attend the event at Sadler's. Ad Astra agrees this was a fact issue to be determined by the Board. K.S.A. 2008 Supp. 44-508(f) will be applied to bar compensation under the Act if Douglas was under "no duty" to attend the recreational or social event which caused his injury and the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer. Conversely, if Douglas was under *some duty* to attend the event at Sadler's, then K.S.A. 2008 Supp. 44-508(f) does not apply to bar compensation under the Act.

Ad Astra argues that Douglas' attendance at the Sadler's event was not mandatory. In fact, this is undisputed from the evidence. But just because attendance at the event was not mandatory does not mean that Douglas was under no duty to attend. Here, the

Board concluded that Douglas was under "some duty" to attend the event at Sadler's. The question we must answer is whether this finding is supported by substantial evidence when viewed in light of the record as a whole.

An important fact upon which the Board relied was that the event at Sadler's was scheduled during Ad Astra's regular business hours, as opposed to being scheduled in the evening or on a weekend when Douglas would have been on his own time. Douglas was given a choice to either attend the event or to remain at work. Given this choice, it is not surprising that only two or three employees in the entire company chose not to attend the event. Douglas testified that he did not believe he was free to leave the event before 5 p.m. In fact, even after Douglas was injured on the go-cart track, he stayed at Sadler's until the event was completed.

Douglas testified that the event at Sadler's was a "team builder," and he believed he should attend the event to demonstrate that he was part of Ad Astra's team. This testimony was corroborated by other witnesses. Stacy White agreed that team building might have been the idea for the event, even though this concept was not expressly stated. Joy Hoffman also testified it was her perception that it was a team building event. Douglas' perception was also corroborated by the fact that Ad Astra's employees were divided into teams once they arrived at Sadler's.

Douglas testified that he felt pressured to attend the event at Sadler's. This was corroborated by Hoffman's testimony. Although Hoffman stayed at work and did not go to Sadler's, she agreed that she felt pressure to attend the event. Hoffman testified that she was concerned that she might be perceived as someone who was not part of the group for not attending the event.

The event at Sadler's was recreational and social in nature, but it contained some business components as well. Tom Shaver discussed the release of a new software product, and Douglas considered this a pep talk. Shaver agreed the event was intended to create good feelings among the employees towards Ad Astra. Jackie Shaver testified that although attendance was not mandatory, she wanted employees to attend the event. She agreed that the event might encourage employees to renew their efforts on behalf of Ad

Astra in providing customer service or sales. Ad Astra deducted the expenses for the event on its taxes as a necessary business expense.

There is also evidence in the record that detracts from the Board's finding that Douglas was under some duty to attend the event at Sadler's. Tom and Jackie Shaver both testified that the event primarily was intended to thank employees for their extra work at the conference and that attendance at the event was not mandatory. Stacy White corroborated that it was to be a fun event for all employees due to their hard work at the conference. Joy Hoffman testified that the event primarily was intended to reward the employees and that she chose not to attend the event.

In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review. Given the evidence presented to the Board, we conclude the Board's factual finding that Douglas was under "some duty" to attend the event at Sadler's is supported by substantial evidence when viewed in light of the record as a whole. Based upon this finding, the Board did not err in concluding that Douglas' injury arose out of and in the course of his employment with Ad Astra, rather than during a recreational or social event as contemplated by K.S.A. 2008 Supp. 44-508(f).

Affirmed.

\* \* \*

GREEN, J., dissenting: I respectfully dissent from the majority's decision affirming the Board's holding that Douglas' injury arose out of and in the course of his employment.

First, I disagree with the majority's holding that the Board properly consulted the factors set forth in 2 Larson's Workers' Compensation Law § 22.01 (2009), in interpreting and applying the exclusionary provision of K.S.A. 2008 Supp. 44-508(f). Consider this fact, during oral argument, the appellee's attorney conceded that the statutory recreational or social event exclusion under K.S.A. 2008 Supp. 44-508(f) was unambiguous. Moreover, the appellee's attorney further conceded that the Board did not need to resort to the Larson's factors to interpret the statute. Yet, the Board

injected ambiguity into K.S.A. 2008 Supp. 44-508(f) when it determined that the statute did not define the phrase "recreational or social event." When deciding whether a statute is ambiguous, a basic principle of statutory construction provides that where words in a statute are not defined, they must be given their ordinary meaning. See *Roda v. Williams,* 195 Kan. 507, Syl. ¶ 3, 407 P.2d 471 (1965) (words in common use contained within a statute are to be given their natural and ordinary meaning); see also *Perrin v. United States,* 444 U.S. 37, 42, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979) (words not defined in a statute should be given ordinary or common meaning).

In the phrase "recreational or social event," which the legislature chose to use in K.S.A. 2008 Supp. 44-508(f), the word "recreational" is used as an adjective, and it refers to recreation. Webster's Third New International Dictionary 1899 (1986) defines the noun "recreation" as a means of diversion or entertainment. The adjective "social" is defined as relating to convivial activities. Webster's II New Riverside University Dictionary 1103 (1988). Merriam-Webster's Collegiate Dictionary 274 (2004) defines the adjective "convivial" as "relating to, occupied with, or fond of feasting, drinking, and good company."

Based on the ordinary and normal meaning of the phrase "recreational or social event," there was no need for the Board to resort to the Larson's factors in interpreting K.S.A. 2008 Supp. 44-508(f). The phrase was unambiguous within the context of K.S.A. 2008 Supp. 44-508(f).

Moreover, even if the phrase "recreational or social event" were ambiguous, the Board's first duty was to attempt to determine the legislative intent underlying the phrase and to consider the words of the phrase in their plain and ordinary meaning. Instead, the Board determined that the phrase was ambiguous and immediately resorted to the Larson's factors to develop a different standard to apply. In the process, the Board formulated an unstated statutory purpose when it focused on Douglas' feelings and determined that Douglas subjectively perceived a duty to attend the Sadler's event: "Claimant was given a choice of either going to the event or remaining at work *but he said that he felt pressured to attend the*

*event.*" (Emphasis added.) The Board's finding was important, and its importance will be demonstrated later.

Despite the clear statutory text requiring Douglas to show that he had a duty to attend the recreational or social event, the Board decided that a perceptible standard sufficed. The Board developed this perceptible standard from one of the Larson's factors: "One factor is whether the employer expressly or impliedly requires participation in the activity . . . ." See 2 Larson's Workers' Compensation Law § 22.01(2), p. 22-2. After making this observation, the Board found as follows: *"Claimant felt that participation was required* and Ms. Hoffman agreed that she also felt some pressure to attend." (Emphasis added.) Interestingly, the record shows that although Hoffman may have felt some pressure to attend the Sadler's event, she chose not to attend the event.

This perceptible or subjective standard that the Board adopted is not found in K.S.A. 2008 Supp. 44-508(f). Moreover, this subjective standard is no standard at all in the reality of application. For example, if employees perceive that they have a duty to attend a recreational or social event, even though mistaken, they will satisfy the duty to attend requirement under the Board and the majority's reasoning. As a result, the subjective standard test would be no test at all. The Board has subverted the plain language of K.S.A. 2008 Supp. 44-508(f) by using one or more of the Larson's factors to adopt a perceptible or subjective standard at the expense of the statute. Moreover, the Board and the majority's interpretation of K.S.A. 2008 Supp. 44-508(f) is erroneous as a matter of law.

## Duty to Attend

As stated earlier, the Act recognizes a recreational or social event exclusion. It excludes from coverage any injury to an employee while engaged in a recreational or social event (1) when the employee was under no duty to attend the recreational or the social event and (2) when the injury did not result from the performance of tasks related to the employee's normal job duties or from the performance of tasks which the employer specifically instructed the employee to perform. K.S.A. 2008 Supp. 44-508(f). I agree with the majority's conclusion "that the second circumstance is met be-

cause go-cart racing is not part of Douglas' normal job duties." As a result, the only question that remains was whether the first circumstance was met.

Both the Board and the majority determined that Douglas was under "some duty" to attend the Sadler's event. Yet, as previously stated, the Board specifically found that Douglas had a choice whether to attend the Sadler's event: "Claimant was *given a choice of either going to the event or remaining at work* but he said that he felt pressured to attend the event." (Emphasis added.) The Board and the majority's determinations (that Douglas was under some duty to attend the Sadler's event) rest on a logical contradiction.

For example, the Board's argument begins with a conjunctive proposition that contains two conjuncts (one based on the statutory language contained in the first prong of K.S.A. 2008 Supp. 44-508[f] and the other based on the Board's finding that Douglas was given a choice whether to attend the recreational event) that are logically contradictory: Douglas cannot both be under a duty to attend the recreational event and not be under a duty to attend the recreational event. In a two-part conjunctive proposition, like this one, one conjunct comes before the word "and," and the other comes after the word "and." (*E.g.*, "It is both raining and not raining.") In a conjunctive syllogism, the first premise negates the truth of a conjunctive proposition; the second premise affirms one of the conjunctive proposition's conjuncts; and the conclusion then denies the other conjunct. Two contradictory conjuncts, as in this example, can never be true together or false together; one will always be true, and the other will always be false. See Joseph, The Trivium: The Liberal Arts of Logic, Grammar, and Rhetoric, pp. 114-15 (2002).

The relation between these two conjuncts can be reconstructed as a conjunctive syllogism:

(1) The employee cannot both be under a duty to attend the recreational event and not be under a duty to attend the recreational event.

(2) The record indicates that the employee was not required to attend the recreational event (established by the Board's finding

that "[c]laimant was given a choice of either going to the event or remaining at work").

(3) Therefore, the employee was not under a duty to attend the recreational event.

The statutory language of K.S.A. 2008 Supp. 44-508(f) allows for no middle ground: no employee can both be required to attend the recreational event and not be required to attend the recreational event. See Joseph, The Trivium, p. 115.

Consequently, to justify their reasoning, both the Board and the majority have resorted to the liberal construction rule. In doing so, they have divined an unstated statutory purpose and elevated it above the clear text of the statute requiring Douglas to show that he had a duty to attend the recreational event under K.S.A. 2008 Supp. 44-508(f). Here, the majority reasons that "just because attendance at the event was not mandatory does not mean that Douglas was under no duty to attend. Here, the Board concluded that Douglas was under 'some duty' to attend the event at Sadler's." Under the traditional square in opposition, the E proposition that Douglas was "under no duty to attend" and the I proposition that Douglas was "under some duty to attend" are opposed in both quantity and quality. Moreover, they too are contradictory. Of the two propositions, only one is true, and one is false. Copi and Cohen, Introduction to Logic, p. 187 (12th ed. 2005). The E proposition is true because the record states, as the majority correctly notes, that "Douglas was given a choice either to attend the event or to remain at work." This fact proves the contradictory: that Douglas was "under no duty to attend."

Moreover, under the subjective standard adopted by the Board and the majority, employees can show that they met the duty to attend requirement by simply maintaining that they perceived *some duty* to attend. How does one measure an employee's perception of *some duty* to attend? This standard will invite confusion and increased arbitrariness.

Finally, if employees can avoid the first prong of the exclusion requirement under K.S.A. 2008 Supp. 44-508(f) by simply perceiving *some duty* to attend a recreational event, the statute will

soon become meaningless because, as the majority correctly points out, an employee is barred from compensation under the Act only when both prongs have been met. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). Based on the earlier stated reasons, the record lacks substantial competent evidence that Douglas had a duty to attend the Sadler's event. *Some duty to attend* is not contained in K.S.A. 2008 Supp. 44-508(f).

Because both prongs under K.S.A. 2008 Supp. 44-508(f) were satisfied, Douglas' accidental injury did not arise out of and in the course of his employment. Moreover, because the majority has employed a broad expansion of K.S.A. 2008 Supp. 44-508(f), I would reverse.