No. 101,445

DANNY DOUGLAS, *Claimant/Appellee*, v. AD ASTRA INFORMATION SYSTEMS, L.L.C., *Respondent/Appellant*, and HARTFORD INSURANCE COMPANY, *Insurance Carrier/Appellant*.

(293 P.3d 723)

Opinion filed February 8, 2013.

*Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause, and *Tracy M. Vetter*, of Law Offices of Steve Piland, of Overland Park, was on the brief for appellants.

*Daniel L. Smith*, of Ankerholz and Smith, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Danny Douglas was awarded benefits under the Workers Compensation Act (Act) for an injury he sustained while operating a go-cart at an event sponsored by his employer, Ad Astra Information Systems, L.L.C. The employer and its insurance carrier, Hartford Insurance Company, (hereafter collectively referred to as Ad Astra) appealed the award, claiming that Douglas' injuries were not compensable under K.S.A. 2006 Supp. 44-508(f) because they were sustained during a recreational or social event that Douglas was not required to attend. The Court of Appeals, in a split decision, affirmed the Workers Compensation Board (Board), and we granted Ad Astra's petition for review. Concluding that the Board applied the incorrect legal standard, we reverse and remand this case to the Board for further proceedings in conformance with the plain language of K.S.A. 2006 Supp. 44-508(f).

## FACTUAL AND PROCEDURAL OVERVIEW

At the time of his injuries, Douglas worked as a computer support analyst for Ad Astra, a software company in Overland Park, Kansas. His normal duties required him to answer questions and solve customers' problems regarding Ad Astra's software between the hours of 8 a.m. and 5 p.m., Monday through Friday.

On November 3, 2006, Douglas received an e-mail inviting him to attend a company-sponsored event that afternoon at Sadler's, a facility that contains games and a go-cart track. Ad Astra employees were given the option of either attending the event or remaining at work. Douglas and at least one other employee testified that they felt pressured to attend the event; only two or three employees remained at their normal work stations. Ad Astra had arranged the special event primarily to show its appreciation to its employees for their recent work at a client conference, but some of the employees viewed the event as a "team builder." The company had reserved exclusive use of the go-cart track and covered all of the event expenses, including food. Ad Astra deducted the cost of the event as a necessary business expense. Employees were paid their full wage while attending the event. An employee who had scheduled vacation that day was permitted to take the time off, but was required to count the time as vacation.

Upon arriving at Sadler's, the employees were directed to a room which had been reserved for them by Ad Astra and where food was provided for them. The company's owner, Tom Shaver, gave a short speech thanking the employees for their work on a recent conference and, according to Douglas, gave a brief pep talk about one of the company's upcoming products. The employees were then divided into teams and asked to compete for prizes. The teams with the fastest lap times around the go-cart track would win. Douglas stated that he would normally not race a go-cart but that he agreed to race because he wanted to be a part of his team.

Racing his go-cart in the team competition, Douglas encountered another go-cart stopped on the track, prompting him to sharply turn to avoid a collision while traveling at an estimated 20 to 30 miles an hour. Douglas crashed his go-cart into a tire wall and was thrown from the vehicle, landing on his right side. After the wreck, Douglas experienced pain and did not race again, although he remained at the event for the rest of the workday.

Later that night, Douglas sought medical treatment for the injuries he sustained in the wreck. He was subsequently diagnosed with multiple injuries, including a rib fracture; pulmonary contusions; reduced pulmonary function; and a lung injury that required surgery. A court-appointed physician ultimately concluded that Douglas sustained a 15 percent permanent impairment as the result of his injuries from the go-cart wreck.

*Workers compensation evidentiary hearing*

Before the administrative law judge (ALJ), Ad Astra denied that the accident was compensable because Douglas was engaged in a recreational or social event and was neither required to attend the event nor performing tasks related to his normal job duties. Douglas testified that he felt obligated to attend the event. He believed that it was designed for team building and that Ad Astra expected him to attend. Douglas also testified that he believed employees were not free to leave the event before 5 p.m. because the employees were told they would have to work at their normal duties if they did not attend the event.

Ad Astra's owners, Tom and Jackie Shaver, indicated that they intended the gathering at Sadler's to be a "thank you" to the employees and a fun event which was not mandatory. But Tom Shaver also stated that the event was intended to boost morale and increase enthusiasm towards the company and its products. Jackie Shaver testified that the e-mail invitations did not indicate that the Sadler's function was mandatory and that neither she nor her husband pressured employees to attend. Although she wanted the employees to attend the event, the two or three employees who did not attend were not reprimanded.

Another employee, Joy Hoffman, stated that she felt some peer pressure to attend the Sadler's function and she perceived the event to be a team building exercise. Despite that perception, she admitted that no one ever told her the event was mandatory. Ultimately, however, Hoffman did not attend because she felt ill; she opted to remain at the Ad Astra offices.

Another employee, Stacy White, testified that the purpose of the event was to do "something fun" and was meant as a thank you. She also did not feel that it was mandatory. According to White, team building may have been the idea behind the function, but it was not expressly stated. White indicated that she left early to pick up her children from daycare and that no one told her she was required to stay. She further stated that she was not forced to make up the missed time and was not reprimanded by her employers for leaving early.

After hearing the evidence, the ALJ determined that Douglas' injuries were compensable. The ALJ awarded Douglas compensation for a 15 percent whole person permanent impairment, and Ad Astra appealed.

*Appeal to the Board*

On appeal, Ad Astra continued its argument that Douglas' claim was barred by K.S.A. 2006 Supp. 44-508(f). Ultimately, the Board affirmed the ALJ's award.

The Board noted that the Act expressly states that it should be liberally construed to bring employers and employees within its provisions, but that once the Act's applicability has been deter-

mined, its provisions must be applied impartially. K.S.A. 2006 Supp. 44-501(g). The Board then turned its attention to interpreting K.S.A. 2006 Supp. 44-508(f), which provides:

"The words, 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to employees while engaged in recreational or social events under circumstances where the employee was under no duty to attend and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer."

The Board opined that the Act does not define what a recreational or social event might be. Therefore, it utilized the three factors for determining whether recreational and social activities fall within the course of a worker's employment set forth in 2 Larson's Workers' Compensation Law § 22.01, p. 22-2 (2009). The Board described the Larson's factors as: (1) whether the employer expressly or impliedly requires participation in the activity or brings the activity within the orbit of employment by making the activity part of the service of employment; (2) whether the employer derives a benefit from the employee's participation beyond the benefits of the employee's health and morale; and (3) whether the activities occur on the employer's premises during lunch or recreation period as a regular incident of the employment.

With respect to the first factor, the Board noted that the claimant and at least one other employee believed that participation in the event was required and that the employer had exerted some pressure on them to attend. The Board listed the circumstances that would support the implication that employees were required to attend the event and participate in go-cart racing. For instance, when Douglas arrived at Sadler's, he was directed to a room reserved for Ad Astra employees and assigned to a racing team by a coowner. The only alternative to event participation was to remain at work, effectively motivating employees to attend the social or recreational event. A coowner conceded that she wanted her employees to attend the event.

With respect to the second Larson's factor—the employer's benefit from the employee's participation—the Board first noted that the activity was promoted by Ad Astra as a reward for its employees'

work at a client conference. But it then considered that one coowner had given a brief speech regarding a new product and the other coowner had assigned the employees to teams for racing go-carts, implying a team-building activity. The Board opined that if the sole purpose was to reward employees for past work, "it seems the more traditional cash bonuses or time off from work could have been utilized."

For the third factor, the Board looked at Larson's declaration that recreational injuries incurred by an employee during the noon hour on the employer's premises have been held compensable in the majority of cases. Acknowledging that the injury did not occur on Ad Astra's normal work premises, the Board pointed out that the accident occurred on premises that Ad Astra had reserved exclusively for its employees to have lunch and race go-carts. The Board was also persuaded by the fact that Ad Astra was paying Douglas his normal wage at the time of the accident. Likewise, although the Sadler's event was not a regular incident of employment, Ad Astra routinely provided lunch for its employees (as it did here) 1 day a week.

After discussing *Hizey v. MCI*, 39 Kan. App. 2d 609, 181 P.3d 583, *rev. denied* 286 Kan. 1177 (2008), where an injury during a voluntary dance contest was found to have arisen out of and in the course of employment, the Board held as follows:

"There was, at a minimum, an implied requirement or some duty to attend the event, and claimant was assigned to a team which indicates that team building was a component of the event. Moreover he was encouraged to drive fast in the race. He was paid while attending the event at a location reserved for respondent's employees. Understanding that work often entails social interaction and that the Workers Compensation Act was intended to be liberally construed to bring employers and employees within its provisions, the Board finds claimant's accident did not occur during a recreational or social event as contemplated by K.S.A. 2007 Supp. 44-508(f)."

## Court of Appeals decision

On appeal, a split panel of the Court of Appeals affirmed the Board. *Douglas v. Ad Astra Information Systems*, 42 Kan. App. 2d 441, 213 P.3d 764 (2009). One of Ad Astra's arguments on appeal was that the Board had erred in applying the Larson's factors,

rather than following the statutory language of K.S.A. 2006 Supp. 44-508(f). The panel majority rejected that argument, agreeing with the Board that "the Act does not define what constitutes recreational or social events contemplated by K.S.A. [2006] Supp. 44-508(f)." 42 Kan. App. 2d at 449. Citing to a number of cases in which Kansas appellate courts have referred to Larson's treatise on workers compensation, the majority concluded that the Board did not err in utilizing those treatise factors. 42 Kan. App. 2d at 449.

Notwithstanding the majority's finding that it was appropriate to use the Larson's factors, its opinion focused on the "no duty to attend" language in K.S.A. 2006 Supp. 44-508(f). Acknowledging that the evidence was undisputed that Douglas' attendance at the Sadler's event was not mandatory, the majority opined that fact did not establish that Douglas was under no duty to attend. Rather, it found that the question presented on appeal was whether the Board's determination that Douglas was under "some duty" to attend the Sadler's event was supported by substantial evidence. 42 Kan. App. 2d at 454. Reviewing the record as a whole, without reweighing the evidence, the majority found sufficient support for the Board's factual finding regarding Douglas' duty to attend the event and, therefore, determined that the Board had not erred in declining to exclude Douglas' injuries under K.S.A. 2006 Supp. 44-508(f). 42 Kan. App. 2d at 454.

The dissent disagreed with the majority's holding that the Board properly consulted the Larson's factors because the dissent found the phrase "recreational or social events" to be unambiguous within the context of K.S.A. 2006 Supp. 44-508(f). Moreover, the dissent would have resolved any perceived ambiguity by looking at the plain and ordinary meaning of the words utilized by the legislature, rather than resorting to a treatise to develop a different standard to apply. 42 Kan. App. 2d at 454-55 (Green, J., dissenting). In the dissent's view, the statutory phrase "no duty to attend" means the same as "was not required to attend," *i.e.*, if an employee is not required to attend a particular recreational event, then the employee is not under a duty to attend the recreational event. 42 Kan. App. 2d at 457-58. The dissent discerned that the only support for the majority position was Douglas' perception that he had

"some" duty to attend the event and that utilizing that subjective standard would effectively render K.S.A. 2006 Supp. 44-508(f) meaningless. The dissent would have reversed the Board and found Douglas statutorily barred from recovering workers compensation benefits for his injuries. 42 Kan. App. 2d at 459.

INTERPRETATION OF K.S.A. 2006 SUPP. 44-508(f)

*Standard of Review*

Generally, the issue of whether an employee's accident arose out of and in the course of employment for workers compensation purposes is a question of fact. *Titterington v. Brooke Insurance,* 277 Kan. 888, 896, 89 P.3d 643 (2004). But to the extent we are called upon to interpret K.S.A. 2006 Supp. 44-508(f), we are presented with a question of law over which our review is unlimited. See *Unruh v. Purina Mills,* 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

In dealing with a statute in a workers compensation appeal, no deference is due the interpretation or construction given the statute by an ALJ or the Board. *Higgins v. Abilene Machine, Inc.,* 288 Kan. 359, 361, 204 P.3d 1156 (2009). To be crystal clear, we unequivocally declare here that the doctrine of operative construction, as described in Syllabus ¶ 3 and on page 448 of the Court of Appeals' opinion (*Douglas,* 42 Kan. App. 2d 441), has been abandoned, abrogated, disallowed, disapproved, ousted, overruled, and permanently relegated to the history books where it will never again affect the outcome of an appeal. See, *e.g., Fort Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.,* 290 Kan. 446, 457, 228 P.3d 403 (2010). Accordingly, that portion of the Court of Appeals' opinion is reversed and held for naught.

*Analysis*

The general rule of employer liability for employee injuries is set forth in K.S.A. 2006 Supp. 44-501(a), which states, in relevant part:

"If in any employment to which the workers compensation act applies, personal injury by accident *arising out of and in the course of employment* is caused to an employee, the employer shall be liable to pay compensation to the employee in

accordance with the provisions of the workers compensation act." (Emphasis added.)

But, as indicated, the Act contains a limitation upon the definition of "arising out of and in the course of employment" that effectively excludes injuries sustained by employees while engaged in certain recreational or social events. K.S.A. 2006 Supp. 44-508(f). The task presented here is to determine whether Ad Astra's go-cart racing event fit within the category of recreational or social events that are excluded from the Act.

The first step in that analysis is simply to read the statutory language, giving common words their ordinary meanings. *Padron v. Lopez,* 289 Kan. 1089, 1097, 220 P.3d 345 (2009). If that plain reading reveals what the legislature intended, we need not resort to legal treatises to create a meaning for the statute. *Cf. Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271-72, 202 P.3d 7 (2009) (where statute plain and unambiguous, court need not resort to canons of construction or legislative history to construe legislature's intent).

Both the Board and the Court of Appeals majority found the need to go beyond the statutory language because they discerned that the Act did not define what constitutes a recreational or social event under K.S.A. 2006 Supp. 44-508(f). See 42 Kan. App. 2d at 449. But the inquiry is not what constitutes a recreational or social event, but rather which recreational or social events will be excluded from workers compensation coverage. One cannot credibly refute that the pizza eating and go-cart racing in this case were recreational or social activities. See *State v. Sheldon,* 290 Kan. 523, 526, 231 P.3d 573 (2010) (citing *Schmidtlien Electric, Inc. v. Greathouse,* 278 Kan. 810, 822, 104 P.3d 378 [2005]) ("Words in common usage are to be given their natural and ordinary meaning."). Yet, the statute only excludes injuries incurred by employees engaged in recreational or social events under certain circumstances, which are specifically described in the statute to be "where the employee was under no duty to attend and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer." K.S.A. 2006 Supp. 44-508(f).

Ironically, the portion of the Larson's treatise to which the Board and the panel majority refer to fill the perceived definitional void in the Act actually addresses the identical subject matter as 44-508(f), albeit in the positive rather than the negative. The statute essentially says that recreational or social events are *not* within the course of employment where certain circumstances occur; Larson's says that "[r]ecreational or social activities *are within* the course of employment when" certain circumstances exist. (Emphasis added.) 2 Larson's Workers' Compensation Law § 22.01, p. 22-2. Accordingly, there was no need to resort to the Larson's factors when the statute contained all of the needed information to resolve the question presented.

Moreover, the circumstances described in Larson's differ from those the legislature set forth in the statute. The statute focuses on whether the employee had no duty to attend the recreational or social event and whether the tasks being performed by the employee were normal job duties or were specially directed by the employer. Larson's second factor—the benefit derived by the employer—does not fit the statutory scheme at all. Granted, an analysis of Larson's first and third factors could provide some help with the consideration of the statutory attendance and task performance criteria, but they are not identical. For instance, Larson's implied duty to attend is not the same as the statute's no duty to attend; the latter criterion conveys the notion that there is a complete absence of any duty to attend, implied or otherwise. Accordingly, we hold that the Board erred in using the Larson's factors as the test, rather than applying the criteria laid out in the statute. A legal treatise may be utilized to explain and interpret Kansas law, but it cannot serve to supplant or alter the actual text of a statute.

Although Douglas does not ask us to find that any error in using the Larson's factors would be harmless error, we pause to briefly consider the possibility. We agree with the Court of Appeals majority that the record contains sufficient evidence to support the Board's finding that Douglas was under some duty to attend the Sadler's event. We disagree with the position of the Court of Appeals dissent that Douglas had no duty to attend the Sadler's event if his attendance at that facility was not mandatory. The evidence

is undisputed that Douglas was mandated to be in one of two places at the time of the accident: Sadler's facility or the Ad Astra facility. If he was not at his regular work station, Douglas had a duty to attend the recreational or social event at Sadler's. Such a conditional duty to attend cannot be said to fulfill the high hurdle of no duty to attend.

Nevertheless, the Board applied the incorrect legal standard, and we are loathe to step in and make the requisite factual findings to apply the correct standard. Appellate courts do not make factual findings but instead review those made by district courts or administrative agencies. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010). Accordingly, we are unwilling to declare, *sua sponte*, that the Board's utilization of the incorrect legal standard in determining whether Douglas' injuries arose out of and in the course of his employment constituted harmless error. The matter is remanded to the Board to make the determination based on the statutory criteria of K.S.A. 2006 Supp. 44-508(f).

But before concluding, we make one last observation. Both the Board and the Court of Appeals majority summarily dismissed the task performance criteria of the statute by declaring that Douglas was not performing his normal job duties. That declaration overlooks the remainder of the statutory language: "or as specifically instructed to be performed by the employer." K.S.A. 2006 Supp. 44-508(f). Consideration should be given to any evidence which might support that a coowner specifically instructed Douglas to race the go-carts.

Reversed and remanded to the Board with directions.

MORITZ, J., not participating.

PETER V. RUDDICK, District Judge, assigned.