NOT DESIGNATED FOR PUBLICATION

No. 114,482

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT TAYLOR GOULD,
*Appellee*,

v.

WRIGHT TREE SERVICE, INC.,
and
ZURICH AMERICAN INSURANCE COMPANY,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed May 13, 2016. Affirmed.

*P. Kelly Donley, Travis L. Cook*, and *Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.

*John G. O'Connor,* of Robb, Taylor & O'Connor, of Kansas City, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

*Per Curiam*: Robert Taylor Gould spilled gasoline on his clothing while refueling a chainsaw at his job as a groundsman for Wright Tree Service (Wright). Later, on a short break, Gould lit a cigarette. The cigarette ignited the gasoline on his shirt, severely burning his torso. The Kansas Workers Compensation Appeals Board (Board) found Gould's injury arose out of and in the course of his employment. The Board awarded Gould $11,250.83 as compensation for his permanent partial disability and ordered Wright to pay Gould's injury-related past, but not future, medical expenses. Wright appeals, arguing the Board misinterpreted and misapplied K.S.A. 2015 Supp. 44-

1

508(f)(2) and erroneously found Gould's injury arose out of and in the course of his employment. Wright further contends the Board misinterpreted K.S.A. 2015 Supp. 44-501(a)(1)(D) when it found Gould had not recklessly violated Wright's fire prevention policy. We affirm.

Gould was a 19-year-old groundsman for Wright. Employees for Wright generally worked in crews of two—a groundsman and a foreman. The groundsman's job duties included picking up branches the foreman cut from the trees and completing any other tasks the foreman required, such as refueling chainsaws. Gould was also a volunteer firefighter, but he had not received any training for this position.

Wright provided an employee handbook to all employees once they were hired. The handbook gave employees an overview of the basic policies of the company but was not comprehensive. It had a brief section on safety but did not mention a fire prevention policy.

The handbook encouraged employees to review the "Wright Tree Service Foreman's Manual" to learn the company's policies in their entirety. Wright did not require employees to review the foreman's manual, but Wright expected employees to comply with all policies contained within it. The company issued foreman's manuals to all foremen, and the manuals were available on work trucks at all times. The foreman's manual covered Wright's fire prevention policy, which stated: "Smoking shall be prohibited when handling or working around flammable liquids," and "[c]lothing contaminated by flammable liquid shall be changed as soon as possible."

Wright required its employees to attend weekly safety meetings. During the safety meetings, employees went through portions of the foreman's manual. Aaron Swallow, a general foreman for Wright, testified that he actually held daily meetings for his crew members, and Gould attended those meetings. He did not recall ever going over the fire

2

prevention policy prior to Gould's accident. Wright did not keep records of the topics covered in the safety meetings.

Gould testified the only safety directive he ever received was to stay out of the drop zone, which was a 10-foot area around the equipment. No one ever told him not to smoke around the equipment or flammable liquids, although he knew not to do so. At an earlier deposition submitted into evidence, Gould also testified no one ever gave him an employee handbook to review nor did he review one. He had attended safety meetings at Wright, but they had never talked about what to do if an employee spilled gas on his or her clothing.

On September 3, 2013, Gould was working on a rural acreage in Tonganoxie with his foreman, Joe Bruch. Bruch asked Gould to fill up a chainsaw with gas. Gould filled the chainsaw and picked it up to hand to Bruch. As he did so, gas leaked out of the cap and onto Gould's shirt. Gould was not sure exactly how much gas spilled onto his shirt, but at the time he did not think it was "too much."

Bruch testified that after the spill, Bruch told Gould he had a clean shirt in their work truck that Gould could put on. Bruch told Gould he could take a break for 10 to 15 minutes until Bruch was done and then the two of them would return to the truck. Bruch knew Gould was a smoker, but he did not warn Gould not to smoke.

Gould chose a spot about 10 feet away from the machinery to wait for Bruch in compliance with Wright's policy about not standing in the drop zone. Gould then lit a cigarette while he was waiting. Wright permits groundsmen to smoke while waiting for limbs to drop and many of them do.

While lighting his cigarette, Gould's shirt caught on fire. Gould testified that he had apparently accidentally brushed the ember of his cigarette against a gas-soaked part

of his shirt. Later, he testified he did not know if the cigarette itself or a spark from the lighter had caused the fire. Gould knew gas was flammable and it would ignite if near a cigarette or lighter, but he was "[n]ot thinking" at the time.

After Gould put out the fire, Bruch took him back to the work truck. Bruch applied first aid to Gould's burns. Swallow arrived and took Gould to the emergency room at Lawrence Memorial Hospital. Gould was then transferred to the University of Kansas Medical Center where he underwent a skin graft, taking skin from his thigh and placing it on his hip and shoulder. He spent about a week in the hospital. Gould had scarring on his thigh from the skin graft. He also had scarring on his torso, shoulder, and hip. The skin was raised, itchy, and uncomfortable. Gould has to keep his scars covered and not expose them to more light than necessary for the rest of his life. Gould owed $105,199.86 in medical bills.

Gould returned to work for Wright on November 13, 2013, with no restrictions. His supervisors never reprimanded him for the incident. Greg Williams, a division manager for Wright, testified Gould could have been fired for the incident. He chose not to fire Gould, however, because, as a policy, neither he nor Wright reprimand or fire people who had recently been seriously injured. Furthermore, Williams knew Wright would be laying off workers soon, and Gould would be one of the workers let go. Wright laid off Gould several weeks later.

On March 12, 2015, the administrative law judge (ALJ) entered an award in Wright's favor. The ALJ found smoking was a risk personal to Gould so his injuries did not arise out of and in the course of his employment. He did not address whether Gould had recklessly violated a workplace safety policy.

On August 28, 2015, the Board reversed the ALJ's decision. The Board found Gould's injury was work-related and thus had a causal connection to his employment.

4

The Board also found Gould had not recklessly violated Wright's fire prevention policy. The Board reasoned Gould did not know about the policy and one cannot violate a policy, recklessly or otherwise, that one does not know about. The Board awarded Gould a total of $11,250.83. Wright appeals.

We first address the issue of whether the board erroneously applied the law in finding that Gould's injury arose out of and in the course of his employment. In its order, the Board stated:

> "The ALJ found the risk associated with smoking by claimant was a personal risk, one not associated with his employment. The Board disagrees. The risk of working around gasoline and the fact claimant spilled gasoline on his shirt prior to lighting the cigarette is a work-related risk.
>
> "The ALJ cited *Laturner v. Quaker Hill Bursing, LLC* and *Adams v. Hospira, Inc.*, in support of his finding that cigarette smoking is a personal risk. Neither *Laturner* nor *Adams* apply. Both *Laturner* and *Adams* involved claimants who were injured on their lunch breaks, and neither were on the clock at the time of their accidents. Neither *Laturner* nor *Adams* were performing work duties at the time of their accidents. Both *Laturner* and *Adams* made a personal choice to clock out and go to their employers' respective smoking areas and smoke a cigarette.
>
> "In *Keil v. Brown's Tree Service*, a claimant drained gasoline from a vehicle to put in a generator. Gasoline got on the claimant's clothing and ignited when someone nearby lit a cigarette. The Board Member in *Keil* found obtaining gasoline for the generator was an incident of the claimant's employment and concluded the claimant's accident arose out of and in the course of his employment. In *Birdsall v. Shawnee Mission Ford, Inc.*, a claimant burned himself when he lit a cigarette during a break while his hands were drenched with flammable brake fluid. The Board Member found the claimant was injured while taking a cigarette break authorized by his employer.
>
> "In this claim, claimant worked and smoked cigarettes at the same time. Respondent allowed this practice to occur. Respondent benefitted by claimant not taking time away from his duties for a smoke break. The claimant's clothes were saturated, to some extent, with gasoline, which is work-related and without which the claimant would not have been injured."

5

Wright argues the Board failed to find a causal connection between the conditions of Gould's work and his resulting accident as required by K.S.A. 2015 Supp. 44-508(f)(2)(B)(i). Wright contends no causal connection exists between Gould's work and his accident, thus his injury did not arise out of his employment. Additionally, Wright also argues the Board incorrectly determined Gould's accident arose from a work-related risk rather than a personal or neutral risk.

Gould argues the Board properly found a causal connection when it noted he was required to work with gasoline and the accident would not have happened if he had not spilled gasoline on his clothing. Gould also contends that pre-2011 caselaw is still applicable and supports the Board's finding that his injury arose out of a work-related risk.

The Kansas Judicial Review Act (KJRA) K.S.A. 770601 *et seq.*, governs the review of cases arising under the Kansas Workers Compensation Act (KWCA). K.S.A. 44-501 *et seq.* See K.S.A. 2015 Supp. 2015 Supp. 44-556(a). Under the KJRA, an appellate court may grant relief if it determines that the Board "has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). Statutory interpretation is a question of law over which appellate courts have unlimited review. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014). Courts should liberally construe the provisions of the KWCA "only for the purpose of bringing employers and employees within the provisions of the [KWCA]." K.S.A. 2015 Supp. 44-501b(a). The court should apply the KWCA's provisions impartially to employers and employees. K.S.A. 2015 Supp. 44-501b(a). Appellate courts do not owe deference to the ALJ's or the Board's interpretation of the given statute. *Douglas v. Ad Astra Information Systems, LLC*, 296 Kan. 552, 559, 293 P.3d 723 (2013).

Under the KWCA, an injury is compensable only if it arises out of and in the course of employment. K.S.A. 2015 Supp. 44-508(f)(2). An accidental injury arises out of employment only if (1) "[t]here is a causal connection between the conditions under which the work is required to be performed and the resulting accident," and (2) "the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2015 Supp. 44-508(f)(2)(B). Specifically excluded from arising out of employment are accidents or injury which are the result of a neutral risk with no particular employment or personal character or a personal risk. K.S.A. 2015 Supp. 44-508(f)(3)(A)(ii), (iii). An injury occurs in the course of employment if it happens while an employee is at work in the employer's service. See *Rinke v. Bank of America*, 282 Kan. 746, 752, 148 P.3d 553 (2006).

The Kansas Legislature added the provisions at issue in this case in the 2011 amendments to the KWCA. The causal connection requirement codifies long-standing caselaw. See *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 278, 899 P.2d 1058 (1995) ("An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."), Kansas courts had also previously recognized three general categories of risk in workers compensation cases: work-related, personal, and neutral. *Hensley v. Carl Graham Glass*, 226 Kan. 256, 258, 597 P.2d 641 (1979). Prior to the 2011 amendments, work-related and neutral risks were generally compensable, while personal risks were generally not compensable. See *McCready v. Payless Shoesource*, 41 Kan. App. 2d 79, 92, 200 P.3d 479 (2009). The exclusion of neutral risks from compensability under the KWCA is a significant change. This court has also recognized that at least some pre-2011 caselaw is still applicable in interpreting the amended KWCA. See *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 138, 343 P.3d 114 (2015).

7

Here, the Board found the necessary causal connection required under the KWCA. Under K.S.A. 2015 Supp. 44-508(f)(2)(B)(i), a causal connection must exist between the conditions under which an employee must perform his or her work and the resulting injury. The Board noted that Gould worked with gasoline, and there was a risk associated with working with gasoline. The gasoline spill on Gould's shirt was part of this risk. Without the spilled gasoline, Gould would not have been injured. Thus, there was a causal connection between the conditions of working with gasoline and Gould's burns.

Wright argues Gould's injury did not arise out of his employment because at the time of his injury Gould had completed his job requirement to fill the chainsaw. This argument appears to conflate the standard for "arise out of employment" and "in the course of employment." The standard for "arising out of" only requires a causal connection between the conditions of the work and the injury—it does not require that the injury occur at the exact moment an employee is performing a certain job task. The standard for "in the course of" requires an employee to be at work and performing job-related acts. At the time of his injury, Gould was no longer refueling chainsaws. He was, however, on the clock and continuing to perform the requirements of his job. Thus, the injury occurred within the course of his employment, and nothing in the KWCA suggests switching job tasks severs causality.

Wright also argues Gould's smoking, rather than spilling gasoline, was the cause of Wright's accident, and smoking is a neutral or personal risk, not a work-related one. The KWCA does not define neutral or personal risk, but the Kansas Supreme Court previously defined the three types of risk in workers compensation cases as: "(1) those distinctly associated with the job; (2) risks which are personal to the workman; and (3) the so-called neutral risks which have no particular employment or personal character." *Hensley*, 226 Kan. at 258. As Wright notes in its brief, work-related risks are risks "distinctly associated" with employment, and nothing in the amended KWCA appears to have abrogated this language. Catching fire is obviously a risk distinctly associated with

8

working with flammable liquids such as gasoline. Thus, even though Gould's burns did not occur at the moment gasoline spilled on his shirt, his injury still arose out of a risk distinctly associated with his job.

Moreover, while we are not required to defer to the interpretations of the Board, the Board has decided several cases finding injuries on smoke breaks were compensable. *Birdsall v. Shawnee Mission Ford, Inc.*, Docket No. 259,090, 2001 WL 403281 (Kan. Work. Comp. Bd. 2001), is very similar to the present case. In *Birdsall*, the claimant lit a cigarette while on a break when his hands were covered in flammable brake fluid. As a result, he suffered burns to his hands. The respondent argued the claimant's decision to smoke a cigarette on his break was a personal risk, and thus his accidental injury did not arise out of or in the course of his employment. The Board affirmed the ALJ's preliminary hearing order granting the claimant's request for benefits. The Board incorporated the ALJ's analysis but specifically noted:

> "In particular, the Appeals Board finds claimant was injured while taking a cigarette break authorized by the respondent. The cigarette break is considered analogous to a coffee break and the personal comfort doctrine would control. Thus, when accidental injuries occur while on an authorized break there is not a departure from the employment relationship and the injury is compensable." 2001 WL 403281, at *1.

In deciding many cases regarding smoke breaks, the Board often relies on the "personal comfort doctrine." The personal comfort doctrine is defined as:

> "Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." *Williams v. Allied Staffing*, Docket No. 1,058,426, 2012 WL 1142973, at

9

This rule generally recognizes that tending to personal comfort is an incident of employment, and activities which are incidents of employment also "arise out of" employment. 2012 WL 1142973, at *3. The Board has held smoking and smoke breaks fall within the personal comfort doctrine. See *Wallace v. Sitel of North America*, Docket No. 242,034, 1999 WL 1008023, at *2 (Kan. Work. Comp. Bd. 1999). Thus, injuries which occur on smoke breaks are compensable. Furthermore, the Board has continued to apply the personal comfort doctrine since the 2011 amendments to the KWCA and has expressly stated the amended KWCA did not eliminate it. See; *Fratzel v. Price Chopper*, Docket No. 1,066,540, 2014 WL 517247, at *5 (Kan. Work. Comp. Bd. 2014); *Williams*, 2012 WL 1142973, at *4

While the Board in this case did not specifically reference the personal comfort doctrine, the doctrine appears to be part of the basis for its decision. The Board noted Gould attended to a personal comfort (smoking cigarettes) while working, as allowed by his employer. The Board found that "[Wright] benefitted by [Gould] not taking time away from his job duties for a smoke break." See *Wallace*, 1999 WL 1008023, at *2 (noting "[s]moking . . . benefit[s] both the employee and the employer" in discussing personal comfort doctrine). The Board also explicitly referenced *Birdsall* in its analysis, noting the factual similarities.

Wright argues *Birdsall* is inapplicable because it was decided in 2001, long before the 2011 amendments to the KWCA. While *Birdsall* was decided before the amendments, the Board decided *Birdsall* under caselaw that required a causal connection and held accidents arising out of personal risks were not compensable, just as the amended KWCA does. The Board still rejected the argument that claimant's injuries arose out of a personal risk and were thus not compensable. See Birdsall, 2001 WL 403281, at *1. The only

10

change in the amended KWCA that could have made a difference in *Birdsall* is that neutral risks are no longer compensable. The personal comfort doctrine, however, would still be applicable and allow for compensation. The Board has also decided cases after the 2011 amendments which hold that smoke breaks still fall within the personal comfort doctrine. See *Swank v. Northeast Ohio Communications Network*, Docket No. 1,064,232, 2013 WL 5521849, at *4 (Kan. Work. Comp. App. Bd. 2013) (claimant's injury which occurred in restroom after returning from smoke break compensable under personal comfort doctrine). *Williams*, 2012 WL 1142973, at *4 (claimant's injury which occurred while walking to designated smoking area was not result of daily activity or neutral risk and compensable under personal comfort doctrine);

Wright also cites to *Laturner v. Quaker Hill Nursing, LLC*, Docket No. 1,059,381, 2012 WL 6101119 (Kan. Work. Comp. Bd. 2012), and *Adams v. Hospira, Inc.*, Docket No. 1,069,056, 2014 WL 3055469 (Kan. Work. Comp. Bd. 2014), in support of its argument that injuries which occur as a result of smoke breaks are not covered. In *Laturner*, claimant had clocked out for a lunch break. Claimant's employer did not allow smoking in the building and required employees to go to a designated patio to smoke. As claimant stepped out of the door to the patio on her way to smoke, she slipped on ice and injured her spine. The Board found claimant's injury was not work related, because she had no work-related purpose in walking out onto the patio. Rather, the injury arose from her status as a smoker. The Board added: "Smoking is not a 'personal comfort' in the same sense as getting a drink, going to the restroom, or having a snack." 2012 WL 6101119, at *5-6.

In *Adams*, the claimant clocked out for a break between work tasks. Her employer had a strict nonsmoking policy and only allowed employees to smoke in a designated area across the street. As claimant began walking toward the designated smoking area, she slipped on ice and injured her ankle. Relying on *Laturner*, the Board in *Adams* found

11

there was no causal connection between claimant's work conditions and her accident, and her accident arose out of a personal or neutral risk. 2014 WL 3055469, at *3.

The ALJ in this case relied on both *Laturner* and *Adams* in reaching his decision that Gould's injury was not compensable. The Board, however, found these cases did not apply because they were distinguishable. In both cases, the claimants were clocked out for their break. Their employers had a specific policy prohibiting smoking on the job, and required employees to go to specified smoking areas. On the way to the specified smoking area, both claimants were injured by slipping on ice—a risk which was not related to their job duties. On the other hand, Gould was on an authorized break on the clock and was allowed to smoke on the job. Furthermore, his injury was caused by a combination of smoking and spilled gasoline, and the spilled gasoline was clearly related to his job duties.

Wright also argues it did not require Gould to smoke cigarettes as a condition of his job, thus his injury should not be compensable. This reasoning, however, would apply to any "personal comfort." Employers may require employees to take breaks, but they do not require employees to eat, drink, or use the restroom as a condition of employment. Employers allow employees to do so, and it benefits both parties. Smoking may not be a necessity as some personal comforts are; however, "smoking [is] one way employees relieve[] work stress and cope[] with the work day." *Wallace*, 1999 WL 1008023, at *2. Despite the opinions of the Board in *Laturner* and *Adams*, most Board decisions have found smoking is a personal comfort and should be covered by the doctrine.

Thus, the Board did not erroneously apply the law in finding Gould's injury arose out of and in the course of his employment. Gould's work required him to work with gasoline. That gasoline spilled on his shirt and later caught on fire, a risk distinctly associated with his work. At the time of the incident, Gould was on a short, authorized break. He was attending to a personal comfort, making his activities an incident of his

12

employment. Because his actions were causally connected to his job, and he was working at the time of his injury, the Board properly found his injuries were compensable.

We next turn to the question of whether there was substantial competent evidence to support the Board's finding that Gould's injury arouse out of and in the course of his employment.

Whether an injury arose out of and in the course of employment is a question of fact. *Scott v. Hughes*, 294 Kan. 403, 415-16, 275 P.3d 890 (2012). We review a challenge to the Board's factual findings in light of the record as a whole to determine if substantial competent evidence supports those findings. See K.S.A. 2015 Supp. 77-621(c)(7). In conducting this analysis, we must (1) review evidence both supporting and contradicting the agency's findings, (2) examine the presiding officer's credibility determinations, if any, and (3) review the agency's explanation as to why the evidence supports its findings. We do not reweigh evidence or engage in de novo review. *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014); see K.S.A. 2015 Supp. 77-621(d). "Substantial evidence" is evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be easily resolved. *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 285, 324 P.3d 1122 (2014).

In this case, substantial evidence supports the Board's conclusion that Gould's injury arose out of and in the course of his employment. The facts relating to the cause of Gould's injury are for the most part uncontested. Gould testified that as a groundsman his duties included filling chainsaws with gasoline for his foreman. Both Gould and Bruch testified that on the day in question, Gould filled a chainsaw with gas at the request of Bruch, then spilled gas on himself as he handed the chainsaw to Bruch. Both men also testified that Gould took a brief break as he waited for Bruch to complete his tasks. During this brief break, Gould lit a cigarette, igniting the gasoline on his shirt. Both

Bruch and Gould also testified that Wright allowed workers to smoke on the job as they waited for branches to drop. This evidence demonstrates Gould was required to work with flammable liquids as part of his employment, and he was on an authorized short break, although still on the clock, at the time the accident occurred. This is sufficient to support the Board's finding that Gould's injury is compensable.

We must also determine if the Board misinterpreted K.S.A. 2015 Supp. 44-501(a)(1)(D).

On the question of whether Gould recklessly violated Wright's safety policy, the Board found:

> "At the time of his injury, claimant was no longer directly handling flammable liquids, although he did have some gasoline on his shirt. Even if claimant was working around flammable liquids at the time he was injured, there is no evidence he knew of the policy prohibiting his conduct, although claimant testified he knew better than to smoke around flammable materials. One cannot violate a policy, recklessly or otherwise, if one is not aware of the policy. The act of lighting a cigarette after he resumed his work activities was careless but does not rise to the level of recklessness."

Wright argues the Board misinterpreted K.S.A. 2015 Supp. 44-501(a)(1)(D) when it required Gould to have actual knowledge of Wright's fire prevention policy in order to recklessly violate it. Wright concedes Gould may not have known about the policy but contends Gould knew it was dangerous to smoke around flammable liquids. According to Wright, this is sufficient to establish he behaved recklessly and was thus in violation of K.S.A. 2015 Supp. 44-501(a)(1)(D).

Gould argues the Board was reasonable to require he know about the fire prevention policy in order to find he recklessly violated it. He also argues that at the time

of the accident, he was not in violation of the policy. Furthermore, he contends the evidence does not demonstrate he was behaving recklessly.

As noted above, statutory interpretation is a question of law over which appellate courts have unlimited review, and appellate courts do not owe deference to the ALJ's or the Board's interpretation of the given statute. *Golden Rule Ins. Co.*, 300 Kan. at 955; *Douglas*, 296 Kan. at 559.

Under K.S.A. 2015 Supp. 44-501(a)(1)(D), an employee's injury is not compensable if it was the result of the employee's reckless violation of his or her workplace's safety policies. Prior to the 2011 amendments, an employee's injury was not compensable only for willful violations of workplace safety policies. See K.S.A. 2010 Supp. 44-501(d)(1). The amended provision represents a significant change from the prior law, and the interpretation of this new provision is an issue of first impression for this court.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted and give common words their ordinary meaning. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014).

The plain reading of this provision is that an employee cannot receive compensation if his or her injury resulted from the reckless violation of the employer's safety policy. The amended KWCA does not provide a definition of reckless. Kansas civil caselaw and Kansas statutory criminal law, however, similarly define reckless. In *Wiehe v. Kukal*, 225 Kan. 478, 483-84, 592 P.2d 860 (1979), the Kansas Supreme Court

15

discussed the meaning of reckless in the context of emotional distress, quoting the Restatement (Second) of Torts §500 (a) (19654):

"Types of reckless conduct. Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.

"For either type of reckless conduct, the actor must know, or have reason to know, the facts which create the risk. . . .

"For either type of conduct, to be reckless it must be unreasonable; but to be reckless, it must be something more than negligent. It must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent. It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence."

Under the Kansas Criminal Code, someone is reckless when he or she "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2015 Supp. 21-5202(j). Thus, to deny Gould compensation under K.S.A. 2015 Supp. 44-501(a)(1)(D), Gould had to not only violate Wright's fire prevention policy, he either had to have known, should have known, or should have been conscious of the policy prior to violating it.

Wright argues that Gould acted recklessly and his actions violated Wright's fire prevention policy, thus, Gould should not receive compensation. This argument fails on

16

two grounds. First, Wright's fire prevention policy prohibits employees from smoking while handling flammable liquids. As the evidence demonstrates, however, Gould was on a short break and no longer handling gasoline when he lit his cigarette. Wright even argues this exact point earlier in its brief when trying to show Gould's injury did not arise out of and in the course of his employment: "Gould was *not* injured *while handling the gasoline* to fill up his foreman's chainsaw. . . . While standing to the side—*after handling gasoline*—Gould lit a cigarette and caught on fire." Thus, even if Gould had behaved recklessly, his behavior was not in violation of Wright's fire prevention policy, and K.S.A. 2015 Supp. 44-501(a)(1)(D) does not apply.

Second, Wright argues knowledge of a specific safety policy is not necessary to demonstrate an employee recklessly violated that policy. In support of its argument, Wright relies on another Board case, *Valenzuela v. Basic Energy Services*, Docket No. 1,065,257, 2013 WL 5521853 (Kan. Work. Comp. Bd. 2013). In *Valenzuela*, the claimant injured himself when he stuck his hand into moving machinery in violation of workplace safety policy. The Board denied compensation for his injury noting: "While there is no doubt that claimant did not want to hurt himself, his action was a reckless violation of a safety rule, putting his hand in moving machinery, a known and obvious danger." 2013 WL 5521853, at *3. Wright points out that the claimant in that case had received an employee handbook but could not read or write English. Thus, Wright argues, the Board relied purely on the claimant's knowledge of the risk of working on moving machinery, and not his knowledge of any safety policy, in reaching its decision. What Wright does not mention, however, is that the claimant had taken quizzes on machine safety and preventing hand injuries as part of his safety training. Thus, evidence demonstrated the claimant was aware of the safety policy in question. 2013 WL 5521853, at 1.

Furthermore, other Board decisions have allowed compensation for injuries based at least partly on the claimant's ignorance of a specific safety policy. See *Castillo-Chavez v. Ammex Masonry, Inc.*, Docket No. 1,062,121, 2013 WL 2455712, at *8 (Kan. Work.

17

Comp. Bd. 2013) (claimant climbed down scaffolding frame in violation of safety policy to use ladder); *Solorzano v. Packers Sanitation Services, Inc.*, Docket No. 1,056,986, 2012 WL 369780, at \*4 (Kan. Work. Comp. Bd. 2012) (Claimant violated safety policy to lock out machinery prior to cleaning; "(a) worker must be aware of and understand a safety rule before she can be said to have recklessly violated the rule."). While the safety violations in these cases were not obvious as in *Valenzuela*, even in *Valenzuela* the Board considered the claimant's actual knowledge of a safety policy in reaching its decision. Thus, requiring knowledge of a safety policy as part of the recklessness element comports with both the plain language of the statute and prior applications of the provision.

Substantial competent evidence also supports the Board's finding that Gould did not recklessly violate Wright's fire prevention policy. Both Bruch and Gould testified Gould's accident occurred after he had finished handling any flammable liquids. Additionally, Wright's fire prevention policy was only included in its foreman's manual. Gould was not a foreman. The foreman's manual was available to him, but he was not required to read it. Gould attended regular safety meetings, but Swallow did not recall ever covering the fire prevention policy. Gould testified the only safety directive he ever received was to stay out of the drop zone. At the time of his accident, he was in compliance with this safety policy. Gould was a volunteer firefighter, but he had not received training for this position. While he did know not to smoke around flammable liquids, he did not know how much gas had actually spilled on his shirt. Gould testified he lit the cigarette because he was "[n]ot thinking" at the time. These facts establish Gould was not in violation of the policy, he was not aware of the policy, nor was he necessarily behaving recklessly. Because the Board properly interpreted the law and sufficient evidence supports its findings, its order is affirmed.

Affirmed.

18