No. 120,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Appeal of
SOUTHWESTERN BELL TELEPHONE CO., L.L.C.,
from an Order of the Division of Taxation on Assessment
of Kansas Retailers' Sales Tax.

SYLLABUS BY THE COURT

1.

Kansas courts give no deference to administrative agencies' interpretation of statutory language. Instead, the interpretation of a statute is a legal question over which courts' review is unlimited.

2.

The primary aim of statutory interpretation is to give effect to the legislature's intent, expressed through the plain language of the statute. Courts therefore do not add or delete statutory requirements, and courts give ordinary words their ordinary meanings.

3.

Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.

4.

The dedicated HVAC units at issue make it possible for the appellee telecommunications company's transmission and switching equipment to provide a continuous signal. The electricity used to power these dedicated HVAC units is "essential or necessary to" and "used in the actual process of" providing telecommunication services

1

under K.S.A. 2018 Supp. 79-3602(dd)(2) and is therefore exempt from sales tax under K.S.A. 2018 Supp. 79-3606(n).

Appeal from Board of Tax Appeals. Opinion filed January 24, 2020. Affirmed.

*Nathan D. Hoeppner*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*W. Robert Alderson*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, for appellee.

Before MALONE, P.J., STANDRIDGE and WARNER, JJ.

WARNER, J.: Southwestern Bell provides telecommunication services by operating transmission and switching equipment to produce a communication signal. If this equipment overheats, it will stop transmitting signals. To prevent transmission loss, Southwestern Bell has installed dedicated HVAC units to maintain a constant temperature in areas where the transmission and switching equipment operates, allowing the equipment to operate continuously.

Kansas tax statutes allow companies like Southwestern Bell an exemption from sales tax on electricity essential to and actually used in providing telecommunication services. The question before us is whether the electricity used to power these dedicated HVAC units meets these statutory criteria. We conclude it does, and therefore affirm the Board of Tax Appeals' ruling refunding the sales tax Southwestern Bell paid on electricity to power the system's HVAC units.

FACTUAL BACKGROUND

Southwestern Bell operates transmission and switching equipment to create telecommunication signals. This equipment runs continuously, generating significant

2

heat. At the same time, excessive heat renders the equipment inoperable, resulting in a complete system failure in as little as two hours. To avoid system failure, Southwestern Bell must regulate the temperature, humidity, and air quality in areas where the equipment is installed—ensuring the temperature does not deviate 4 degrees from the ideal temperature, the humidity does not deviate more than 40% from the ideal humidity level, and the air quality remains satisfactory.

Southwestern Bell has taken several steps to ensure this equipment remains operational. The equipment is kept in self-contained areas where employees do not work. Lights remain off to reduce heat, the air is recirculated to maintain air quality, and sensors alert employees if the temperature or humidity rises above maximum levels. These areas also contain dedicated heating, ventilation, and air conditioning (HVAC) units. Ductwork is positioned over the equipment to directly cool it.

Kansas tax statutes exempt from sales tax electricity "that is consumed in" providing telecommunication services. See K.S.A. 2018 Supp. 79-3606(n). Southwestern Bell sought $1,059,266 in tax refunds under this statute for the sales tax it paid on electricity purchased from December 2012 to March 2016 to power its transmission equipment and dedicated HVAC units. The Kansas Department of Revenue approved the sales tax refund for the electricity used to power the equipment but denied the $376,037 request relating to the HVAC units. The Department found the HVAC units merely maintained the switching and transmission equipment, and the Department's regulations distinguished maintenance functions from essential functions giving rise to the sales-tax exemption. The Office of Administrative Appeals upheld the Department's denial.

The Kansas Board of Tax Appeals disagreed, finding the electricity powering the dedicated HVAC units was "'essential or necessary' and . . . 'used in the actual process of and consumed' in the providing of services as contemplated by K.S.A. 78-3602(dd)." In

3

particular, BOTA observed that without the dedicated HVAC units, Southwestern Bell would not be able to continuously transmit telecommunication signals:

> "The electricity at issue is essential and necessary to the process of providing telecommunication services. The HVAC system it powers does more than maintain the switching and transmission equipment. Without the heat, humidity, and dust control provided by the HVAC system engineered to operate in the self-contained area where the switching and transmission equipment is located, the equipment would fail and signal transmission would cease."

BOTA therefore reversed the Department's decision regarding the sales-tax exemption on the electricity used to power the dedicated HVAC units and granted Southwestern Bell's requested sales-tax refund of $376,037, plus interest. The Department appeals.

DISCUSSION

K.S.A. 2018 Supp. 79-3606(n) exempts from taxation "all sales of tangible personal property that is consumed in . . . the providing of services . . . for ultimate sale at retail within or without the state of Kansas." Kansas tax statutes define "[p]roperty which is consumed" as "tangible personal property which is essential or necessary to and which is used in the actual process of and consumed, depleted or dissipated within one year in . . . the providing of services . . . and which is not reusable for such purpose." K.S.A. 2018 Supp. 79-3602(dd)(2). See also K.A.R. 92-19-53(c) (interpreting "used in the actual process" as meaning something "integral and essential to the production or processing activity" that "occur[s] at the location where the production or processing activity is carried on" and "during the production activity").

The central question before us is one of statutory interpretation—whether electricity consumed by Southwestern Bell's dedicated HVAC units constitutes "property

4

that is consumed in . . . the providing of services" under K.S.A. 2018 Supp. 79-3606(n) and thus is exempt from sales tax. There is no question that electricity is "tangible personal property" within the meaning of these provisions. K.S.A. 2018 Supp. 79-3602(pp). Nor is there a dispute that electricity is "consumed," in that it is used to power Southwestern Bell's equipment (whether transmission and switching equipment or HVAC units) and is not reusable. See K.S.A. 2018 Supp. 79-3602(dd)(B). Instead, the parties dispute the function of the temperature-controlling units—whether the dedicated HVAC units are part and parcel of providing Southwestern Bell's telecommunication services or distinct operations that merely maintain the transmission and switching equipment.

As a starting point, we note that although BOTA and the Department have interpreted K.S.A. 2018 Supp. 79-3606(n) differently, we are not bound by either of these diverging interpretations. Kansas courts give no deference to administrative agencies' interpretation of statutory language. See *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013) (no deference given to agencies' interpretation of statutes); see also *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016) (no deference given to agencies' interpretation of their own regulations). Rather, the interpretation of a statute is a legal question over which our review is unlimited. *In re Tax Appeals of Genesis Health Clubs*, 42 Kan. App. 2d 239, 242, 210 P.3d 663 (2009), *rev. denied* 290 Kan. 1094 (2010).

The primary aim of statutory interpretation is to give effect to the legislature's intent, expressed through the plain language of the statute. *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 2, 374 P.3d 680 (2016). We therefore do not add or ignore statutory requirements, and we give ordinary words their ordinary meanings. See 304 Kan. 755, Syl. ¶ 3; *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

The Department argues the electricity used to power Southwestern Bell's dedicated HVAC units is neither "essential or necessary to" nor "used in the actual process of" operating the company's transmission and switching equipment. But while the Department presents these as separate points on appeal, both turn on arguments relating to the equipment's operation. The Department contends the electricity is taxable because the HVAC units are distinct and separate from the equipment creating the telecommunication signals. The Department points out that these machines run on different types of electrical current: The HVAC units use AC power, while the electricity must be converted to DC power to run the transmission and switching equipment. Southwestern Bell argues—and BOTA found—that the electricity powering the HVAC units is essential to the transmission and switching equipment's function because the equipment would be inoperable without those units.

Although the HVAC units and the transmission and switching equipment are different apparatuses, they form a system that makes Southwestern Bell's telecommunication services possible. The fact that the units and equipment use different types of current is irrelevant to our interpretation of the statute, which makes no mention of the type of electric current employed; even the Department's own regulations recognize that the sales-tax exemption turns on "how the [electricity] is used in the production or processing activity," not whether it runs on AC power, DC power, or both. See K.A.R. 92-19-53(a)(5). Without the HVAC units' climate-controlling function, the transmission and switching equipment can operate only two hours before failing, making it impossible to generate a continuous and reliable telecommunication signal. The equipment depends on the units to produce an uninterrupted signal. In other words, under the plain language of K.S.A. 2018 Supp. 79-3602(dd)(2), the electricity used to power these dedicated units is "essential or necessary to" and "used in the actual process of" providing Southwestern Bell's telecommunication services. Thus, this electricity is exempt from sales tax under K.S.A. 2018 Supp. 79-3606(n).

The Department argues that this interpretation is contrary to the conclusions reached by this court in *Genesis Health Clubs* and the Kansas Supreme Court in *Warren v. Fink*, 146 Kan. 716, 717-18, 72 P.2d 968 (1937). We disagree.

In *Genesis*, we denied a health club's exemption request under K.S.A. 79-3606(n) for electricity, water, and gas purchased to power the lights, HVAC units, and exercise equipment in its gyms. 42 Kan. App. 2d at 240-41. The *Genesis* court relied on two subsections of a regulation; the first denied an exemption for electricity used to heat, cool, or light a building in which recreational activities occur, while the second permitted an exemption for electricity which powers recreational machines that "'directly interact[] with the person who pays for the time-limited, interactive service.'" 42 Kan. App. 2d at 243-44 (first citing K.A.R. 92-19-22b[d][1]; then quoting K.A.R. 92-19-22b[d][2]). Relying on a prior case, the court noted that "purchases of property such as electricity are not consumed in the purchaser's business if that property merely serves to create the environment for the business activity rather than to become a part of the product or service itself." 42 Kan. App. 2d 239, Syl. ¶ 5.

In *Warren*, a grocer sought an exemption for electricity used to power a refrigerator that stored perishable goods. At the time, the Kansas tax statutes exempted from sales tax electricity used in "'processing'" a service or commodity. 146 Kan. at 718 (quoting L. 1937, ch. 374, § 2[i], [l]). The *Warren* court rejected the grocer's argument that he was a processor, emphasizing that the food stored in the refrigerator remained "in substantially the same condition" until it was sold to customers. 146 Kan. at 718. Since the electricity did not contribute to making a new product (such as turning milk into ice cream), the grocer never resold the electricity; he used it in his business "just as he might consume electric energy for lights in his store." 146 Kan. at 718.

These cases are distinguishable. Unlike the grocer in *Warren*, there is no question that Southwestern Bell produces telecommunication services. The question before us is

7

whether the electricity used to power the dedicated HVAC units is "essential or necessary to" and "used in the actual process of" providing those services. K.S.A. 2018 Supp. 79-3602(dd)(2). And unlike the health clubs in *Genesis*, which were seeking exemptions for electricity used to power their entire gyms—lights, sales offices, locker rooms, and fitness equipment—the sole purpose of Southwestern Bell's dedicated HVAC units is to provide a climate-controlled environment where the transmission and switching equipment can continuously operate.

Finally, the Department argues that Kansas tax policy requires the ultimate consumer to pay the sales tax exempted to the provider, and the charges for the electricity to power the HVAC units are not passed along to the consumer. But this argument is belied by the Kansas Supreme Court's decision in *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 246-47, 250-51, 891 P.2d 422 (1995) (holding electricity used by a grain elevator in blending, cleaning, drying, and aerating grain was exempt from sales tax because the electricity improved the grain quality—a benefit passed to the consumer). And the Department's policy argument contradicts the plain language of Kansas tax statutes, which specifically recognize electricity as "tangible personal property" that may be exempted under K.S.A. 2018 Supp. 79-3606(n). See K.S.A. 2018 Supp. 79-3602(pp). If the Department believes that this classification should be amended, it must present its rationale to the legislature, not the courts. Accord *Spencer Gifts*, 304 Kan. 755, Syl. ¶ 4 ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.").

To provide telecommunication services, Southwestern Bell operates transmission and switching equipment to generate a signal. To ensure the signal is available continuously, Southwestern Bell must regulate the equipment's temperature through the HVAC units at issue. Without this system—the transmission and switching equipment

8

and the dedicated HVAC units, working together—the signal would terminate; the system is essential and necessary to providing uninterrupted service. The electricity powering that system—including the dedicated HVAC units—is used in the actual process of providing Southwestern Bell's telecommunication services. See K.S.A. 2018 Supp. 79-3602(dd)(2). BOTA correctly found this electricity to be exempted from sales tax under K.S.A. 2018 Supp. 79-3606(n).

Affirmed.